FILED
2025 Jul-22  PM 01:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SUZZANNA BRADY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:24-cv-1032-GMB |
| | ) |
| FRANK BISIGNANO, Commissioner | ) |
| of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

On January 12, 2022, Plaintiff Suzzanna Brady filed an application for supplemental security income ("SSI") with an alleged disability onset date of June 15, 2017. She later amended her alleged onset date to January 12, 2022, the SSI application filing date. Brady's application was denied at the initial administrative level and upon reconsideration. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephone hearing on December 6, 2023, and denied Brady's claims on February 22, 2024. Brady requested a review of the decision by the Appeals Council, which declined review on July 5, 2024. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner") as of July 5, 2024.

Brady's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil

Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 23. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be reversed and remanded.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the [Commissioner's] factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

---

[1] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI. However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 374–75 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Brady bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than [at] step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Brady was 39 years old when she filed her application for SSI. R. 80.  Her primary complaints involve pain when sitting or standing for long periods of time and an inability to concentrate. R. 85.  In her disability report, Brady alleged the following medical conditions: depression, anxiety, bulging disc, herniated disc, lateral disc, scoliosis static in hips, lower back pain, high blood pressure, arthritis, and enlarged red blood cells. R. 283.  She completed the tenth grade and has worked as a housekeeper, cashier/stocker, and parts inspector, but she has no relevant work experience within the past five years. R. 29, 276, 284, 299.

At the hearing, the ALJ posed the following hypothetical question to the vocational expert ("VE"):

> I'd like for you to assume an individual of the claimant's age, education, and past work experience who has a [sedentary] exertional

limitation with the following additional restrictions. This hypothetical individual could occasionally stoop, kneel, crouch, crawl; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds. This hypothetical individual should avoid concentrated exposure to extreme cold; would avoid all exposure to hazardous conditions, such as unprotected heights, dangerous machinery, and uneven surfaces. And this hypothetical individual would be restricted to jobs with no more than simple, short instructions, and simple, work-related decisions with few workplace changes; with only occasional interaction with the general public, supervisors, and coworkers.

R. 102–104. The VE responded that there were jobs at the sedentary level that this hypothetical individual could perform. R. 104. Specifically, he stated that the jobs "would be sedentary, unskilled, SVP 2" and included the jobs of table worker with 49,000 jobs in the national economy, final assembler with 47,000 jobs in the national economy, and stringing-machine tender with 41,000 jobs in the national economy. R. 104. The VE further stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupation. R. 105. He also explained that he "personally derived [the incidence of jobs] using Bureau of Labor Statistics Data" and relied on his training, education, and experience. R. 105–06.

The ALJ issued a decision on February 22, 2024. R. 30. Under step one of the five-step evaluation, he found that Brady had not engaged in substantial gainful activity since January 12, 2022, the application date. R. 20. At step two, the ALJ concluded that Brady suffers from the severe impairments of "disorders of the skeletal spine, other an unspecified arthropathies, essential hypertension, anxiety,

and depression." R. 20.  He also found a non-severe impairment of chronic fatigue syndrome. R. 20.  The ALJ noted that the medically determinable impairments cause significant limitations in Brady's ability to perform basic work activities. R. 21.  At step three, the ALJ found that Brady does not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 21–22.

Before proceeding to the fourth step, the ALJ determined that Brady had the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. § 416.967(a). R. 22.  More specifically, the ALJ found that Brady has the following limitations with respect to sedentary work:

> [C]laimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and never climb ladders, ropes, and scaffolds.  The claimant must avoid concentrated exposure to extreme cold.  The claimant must avoid all exposure to hazardous conditions such as unprotected heights, dangerous machinery, and uneven surfaces.  The claimant is restricted to jobs with no more than simple, short instructions and simple work-related decisions with few workplace changes.  The claimant can engage in the occasional interaction with the public, supervisors, and co-workers.

R. 22.  At the fourth step, the ALJ determined that Brady has no past relevant work. R. 29.  At the fifth step, the ALJ considered Brady's age, education, work experience, and RFC in determining that there are jobs that exist in significant numbers in the national economy that Brady can perform, including work as a table worker, final assembler, and stringing-machine tender. R. 29–30.  Therefore, the

ALJ concluded that Brady was not under a disability as defined by the Social Security Act since January 12, 2022, the date of the application. R. 30. Based on these findings, the ALJ denied Brady's application. R. 30.

## IV. DISCUSSION

Brady makes four arguments in favor of remand. First, she contends that the ALJ erred in his RFC formulation because he did not consider her inability to perform basic math. Doc. 34 at 4–8. Second, Brady argues that the ALJ erred in not resolving the conflicts between the VE's testimony and the information in the DOT. Doc. 34 at 8–17. Brady next contends that the ALJ erred because he did not make factual findings about whether any of the remaining occupations identified by the VE existed in significant numbers in the national economy. Doc. 34 at 17–21. Finally, Brady argues that the ALJ improperly considered the post-hearing memorandum rebutting the VE's testimony. Doc. 34 at 21–27. The court finds that the ALJ erred when he did not resolve the apparent conflicts between the jobs identified by the VE and the information in the DOT. This error necessitates remand for a new factual determination of available jobs in the national economy. Because of this determination, the court does not address Brady's other arguments.

At step five of the sequential evaluation process, the Commissioner bears the burden of establishing that there are sufficient jobs in the national economy that the claimant can perform considering her age, education, work experience, and RFC.

*Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  In other words, "the critical inquiry at step five is whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments, and the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE in making this determination." *Washington v. Comm'r of Social Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018).

"The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Id.* at 1357 n.2.  It "groups jobs into 'occupations' based on their similarities and assigns each occupation a code number." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020). "[T]he DOT is integral to disability hearings . . . as a source of jobs data." *Washington*, 906 F.3d at 1365–66; *see also Goode*, 966 F.3d at 1281 ("To obtain a job-numbers estimate, a vocational expert may consult a publication like the DOT . . . . Although the DOT is outdated—some would say obsolete—it remains one of the vocational expert's primary tools.").

An ALJ has a duty "to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Washington*, 906 F.3d at 1353.

Instead, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Id*. "Specifically, the ALJ must: (1) identify any 'apparent' conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved." *Buckwalter v. Acting Comm'r of Soc. Sec*., 5 F.4th 1315, 1321 (11th Cir. 2021) (citation omitted).

In this context, "'apparent' should be taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion. [Courts] take the word 'apparent' to mean 'seeming real or true, but not necessarily so.'" *Washington*, 906 F.3d at 1366 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)).

Here, the VE testified that Brady could perform three jobs at the sedentary level with the RFC restrictions the ALJ delineated: (1) stringing-machine tender, (2) table worker, and (3) final assembler. R. 104. Brady contends that the VE failed to resolve an apparent conflict between her RFC and the jobs of stringing-machine tender and table worker. The court agrees.

Brady first argues that the level 2 reasoning required for the stringing-machine

tender job conflicts with the ALJ's RFC assessment restricting Brady to jobs with no more than short simple instructions. Doc. 34 at 10–14.  The DOT assigns a GED reasoning level to each position.  A reasoning level 1 requires a claimant to "apply commonsense understanding to carry out simple one-or two-step instructions" and "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT App'x C(III).  A reasoning level 2 requires a claimant to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." *Id*.

The stringing-machine tender job requires a conflict reasoning level of two. DOT 689.585-018.  One of the limitations in Brady's RFC is "jobs with no more than short, simple instructions." R. 22.  However, an RFC with a limitation of "capacity to understand, remember, and carry out short, simple instructions . . . seems to correspond to a GED reasoning level of one" and results in an apparent conflict between jobs that require a reasoning level two. *Albra v. Acting Comm'r of Soc. Sec.*, 825 F. App'x 704, 708 (11th Cir. 2020).  An apparent conflict thus exists between the VE's testimony that Brady could perform the stringing-machine tender job and the limitation in her RFC to short, simple instructions.  The Commissioner concedes that the ALJ erred in failing to resolve this apparent conflict (or at least assumes that it is correct) in arguing that the error is harmless because "the table

worker and final assembler jobs—both GED reasoning level one jobs—remain." Doc. 39 at 14.

Brady argues, however, that the ALJ also failed to resolve the apparent conflict between the RFC limitation to avoid all exposure to dangerous machinery and the job of table worker. Doc. 34 at 14–17; Doc. 40 at 5–8. The DOT describes a table worker as someone who "[e]xamines square tiles of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." DOT 739.687-182. The ALJ restricted Brady's RFC to "avoid all exposure to conditions such as dangerous machinery." R. 22. Brady contends that working along a conveyor belt creates an apparent conflict with this RFC. Doc. 40 at 5–7. The Commissioner disagrees. Doc. 39 at 14–16.

Both sides rely on out-of-circuit district court cases to support their positions on whether working along a conveyor belt is in apparent conflict with avoiding dangerous machinery. Doc. 34 at 15; Doc. 39 at 15–16; Doc. 40 at 6–7. It does not appear that any court in the Eleventh Circuit has weighed in on the issue.[2] The existence of the disagreeing courts, however, presents a problem for the

---

[2] Brady highlights *Jorge L. v. Commissioner of Social Security*, No. 2:24-cv-14104-EGT (S.D. Fla. Dec. 5, 2024), and represents that the Commissioner voluntarily remanded a case where the claimant argued that the ALJ did not resolve the apparent conflict between the RFC limiting the claimant to "never work with hazardous machinery" and the two DOT jobs identified by the VE that required working along a conveyor, including the same table worker position. Doc. 40 at 6. Brady, however, did not attach this case to her submissions and it is not available via online research.

Commissioner. That courts can disagree on whether a conveyor belt constitutes dangerous machinery highlights the apparent conflict between the RFC, the DOT, and the VE's testimony. This is especially true when, as here, there is no explanation of what the ALJ meant by the broad term "dangerous machinery." *See, e.g., Cochrane v. Berryhill*, 260 F. Supp. 3d 1317, 1333–36 (D. Or. 2017); *John C. v. Saul*, 2021 WL 794780, at *3–4 (C.D. Ill. Mar. 2, 2021). The failure of the ALJ to identify and resolve this apparent conflict "means the ALJ's decision is not supported by substantial evidence." *Washington*, 906 F.3d at 1362.

The Commissioner argues that this error is harmless because the final assembler job remains available to Brady.[3] The VE testified that there are 47,000 final assembler jobs nationally. R. 104. But the question whether there are a significant number of jobs in the national economy is a factual issue to be determined by the ALJ. *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021). The court may not substitute its judgment for the ALJ's. For this reason, the court must reverse and remand for the ALJ to make the necessary factual determinations.

## V. CONCLUSION

For these reasons, the court concludes that the decision of the Commissioner

---

[3] The Commissioner considered the table worker job in the harmlessness analysis. Doc. 39 at 18–19.

is due to be reversed and remanded for further proceedings consistent with this memorandum option.  An appropriate order remanding the case to the Commissioner will be entered separately.

DONE and ORDERED on July 22, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE